IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

J. DONALD HENSON, SR.,

Plaintiff,

v.

DEPARTMENT OF HEALTH AND
HUMAN SERVICES and FOOD & DRUG
ADMINISTRATION,

No. 14-cv-908-DRH-DGW

Defendant.

## MEMORANDUM & ORDER

HERNDON, District Judge:

### I.   Introduction

Before the Court is a motion for summary judgment brought by defendants Department of Health and Human Services and Food & Drug Administration (Doc. 89). Defendants seek summary judgment in their favor as to plaintiff J. Donald Henson, Sr.'s (Henson) complaint alleging a cause of action under the Freedom of Information Act ("FOIA"). Henson opposes defendants' motion (Doc. 91). For the following reasons, defendants' motion is **GRANTED.**

### II.   Background

On August 19, 2014, plaintiff Henson, a former employee of the Food & Drug Administration ("FDA), filed this *pro se* action against the Department of Health and Human Services (HHS), the Food & Drug Administration (FDA), and

two individual FDA officials, Frederick J. Sadler and Sarah Kotler, claiming that they violated the Freedom of Information Act ("FOIA"), 5 U.S.C. 552 (Doc. 39)[1]. Henson later filed two amended complaints, the second of which was filed on December 5, 2014 (Doc. 39). Henson alleges that the FDA denied the majority of his 46 individual FOIA requests by failing to properly acknowledge receipt or assign each with a "tractable FOI-ID-#" (Doc. 39, ¶ 5). [2] However, as recorded in the Agency Information Management Systems (AIMS), between November 2011 and August 2014, Henson submitted 18 FOIA requests to the FDA (Doc. 89). FDA aggregated several of those requests, pursuant to its regulations, because of their overlapping nature (Docs. 89-1, ¶ 17 & 89-5, ¶ 16). See also 21 C.F.R. § 20.42. The majority of the records sought by Plaintiff Henson were related to FDA's premarket approval of a particular device, PMA P980022, and its supplements. PMA P980022 is an application by Medtronic Minimed Inc. for a continuous glucose monitoring system, which is a Class III device which was approved by the FDA on June 15, 1999 (Doc. 89-5). All of these premarket approval records are located in FDA's Center for Devices and Radiological Health ("CDRH").

After the FDA received plaintiff's FOIA request, it was logged by FDA's Division of Freedom of Information ("DFOI"). Thereafter, the request was

---

[1] On April 11, 2015, the Court dismissed Frederick J. Sadler and Sarah Kotler for lack of subject matter jurisdiction (Doc. 63).

[2] As explained by the defendants in the pending motion, many of plaintiff's communications were not requests that fall under FOIA. Instead, he sent letters and emails that did not seek agency records, but sought responses to questions and other information outside the scope of the FOIA. Also, plaintiff's written correspondence was often repetitive and voluminous, thus requiring consolidation.

forwarded to the FDA office most likely to possess responsive records. DFOI assigned fifteen of plaintiff's FOIA requests to CDRH because those requests sought records related to a medical device regulated by CDRH.

As mentioned above, plaintiff submitted 18 FOIA requests to the FDA between November 2011 to August 2014. During that same four-year period plaintiff also submitted numerous supplemental communications to the FDA, in addition to his FOIA requests. He sent letters and emails seeking responses to questions and additional information, which FDA alleges were outside the scope of FOIA (Docs. 89-1 & 89-5). [3]

During this time, plaintiff repeatedly filed motions in this Court, many of which were repetitive in nature. See Doc. 111, pgs. 3-4. The Court later stayed this matter pending FDA's re-processing of plaintiff's FOIA requests to ensure that the agency fulfilled its obligations under FOIA (Doc. 66). The FDA proposed that CDRH conduct a new search and provide the plaintiff with all responsive records, a *Vaughn* index, and documents previously produced to plaintiff with the addition of a Bates-stamp. This was done in an effort to resolve the matter at issue and address plaintiff's claims.

---

[3] DFOI and CDRH allege that they reviewed plaintiff's letters marked R-1 though R-10 to ensure that all of the documents described in his letters were included in at least one of the 18 FOIA requests. Based on that review, the agency determined that there was an overlap between the documents referenced in R-1 through R-10 and portions of one or more of plaintiff's FOIA requests (Docs. 89-3 & 89-8). FDA also identified documents described in plaintiff's letters R-2, R-3, R-5, and R-9 that may not have been covered by FDA's responses to plaintiff's FOIA requests. FDA notes that it then produced the relevant documents, which were reviewed, redacted, and Bates-stamped, to plaintiff on June 3, 2016, along with a *Vaughn* index (Docs. 89-1; 89-5). Furthermore, R-1, R-3, R-6, and R-8 all referenced documents posted on FDA's public website. Thus, CDRH sent Plaintiff a letter dated June 3, 2016 with a list of the FDA websites where he could find the available documents (Doc. 89-1).

The rolling production of documents was completed on November 20, 2015, with defendants having produced approximately 7964 bates-numbered pages of documents along with corresponding *Vaughn* indices (Doc. 89-7).[4] Thereafter, the Court lifted the stay (Doc. 87). On June 3, 2016, DFOI and CDRH reproduced documents responsive to FOIA Request 2012-7286, which had been provided to plaintiff prior to this lawsuit, but were absent from the re-production disclosures (Docs. 89-1 & 89-3).

Subsequent to the reproduction, defendants filed the pending motion for summary judgment (Doc. 89). Defendants move for summary judgment under FEDERAL RULE OF CIVIL PROCEDURE 56. Attached to the motion for summary judgment are declarations of William H. Holzerland, Director of the Division of Information Disclosure (CDRH) (Doc. 89-5), and Sarah Kotler, Director of the Division of Freedom of lnformation (DFOI) (Doc. 89-1) in which each director declared their compliance with FOIA. Henson filed his response to the motion for summary judgment shortly thereafter (Doc. 91). Subsequent to the filing of plaintiff's response, the Court issued an order providing plaintiff with notice of the Rule 56 requirements regarding the pending motion for summary judgment (Doc. 109). In said order, the Court directed plaintiff to Fed. R. Civ. P. 56, particularly Rule 56(e). The Court also included a copy of Rule 56 attached to the order (Doc. 109-1). Following the Court's order, plaintiff filed a response (Doc. 111).

---

[4] CDRH later produced an additional 1,247 pages in a subsequent disclosure in response to plaintiff's letters. Thus, since the filing of this case, FDA has produced 8,439 pages of Bates-stamped documents and 457 pages of *Vaughn* indices in response to Plaintiff's FOIA requests (Docs 89-1, ¶¶ 18-19 & 89-5, ¶¶ 18-19).

### III. Summary Judgment Standard

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Veterans Affairs*, 828 F.Supp.2d 325, 329–330 (D.D.C. 2011). Summary judgment is proper when the pleadings, discovery, and disclosures establish that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Winsley v. Cook Cnty.,* 563 F.3d 598, 602–03 (7th Cir. 2009); Fed. R. Civ. P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In deciding whether a genuine dispute exists as to any material fact, a court must view all the evidence and draw all reasonable inferences in favor of the non-moving party. See *Weber v. Univ. Research Assoc., Inc.,* 621 F.3d 589, 592 (7th Cir.2010). The existence of an alleged factual dispute, by itself, will not defeat a summary judgment motion; "instead, the nonmovant must present definite, competent evidence in rebuttal," *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir.2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.,* 476 F.3d 487, 490 (7th Cir.2007).

In FOIA cases, the Court may resolve summary judgment solely on the basis of affidavits or declarations from agency employees if they are "relatively detailed and non-conclusory." *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C. Cir. 1991). Also, an agency has the right to file a motion for summary judgment to demonstrate that it has reasonably conducted a search based upon a plaintiff's

request and has either produced all relevant documents or has legitimate reason for withholding such documents. *Liverman v. Office of Inspector General,* 139 Fed. Appx. 942, 945 (10th Cir. 2005). Ultimately, if the agency's submissions or reasons for withholding seem adequate and made in good faith from the face of the briefings, a district court may elect to award summary judgment in favor of the agency without need for discovery. *Liverman,* 139 Fed. Appx. at 945.

## IV.  Analysis

FOIA serves the "basic purpose of ensuring an informed citizenry, vital to the functioning of a democratic society." *Bensman v. United States Forest Serv.*, 408 F.3d 945, 958 (7th Cir. 2005). FOIA requires federal agencies to make information available to the public when requested, unless the information falls within one of the specified exemptions. See *Enviro Tech Int'l, Inc. v. EPA*, 371 F.3d 370, 374 (7th Cir.2004). Furthermore, it gives federal courts authority "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, (1980) (citing 5 U.S.C. § 552(a)(4)(B)).

As long as the government agency is able to demonstrate that it conducted a reasonable search pursuant to a plaintiff's FOIA request, and withheld documents that properly fall within the claimed FOIA exemptions, a district court can elect to award summary judgment in favor of the government agency without need for discovery. *Becker v. I.R.S.*, 34 F.3d 398, 406 (holding that district court judge did not abuse discretion in denying discovery prior to granting agency's motion for

summary judgment when judge concluded agency affidavit and index was sufficient).

Here defendants move for summary judgment asserting that they are entitled to judgment as a matter of law because FDA has conducted reasonable, good-faith searches for responsive records, and thus complied with its FOIA obligations. The facts support defendants' position.

Plaintiff alleges that the "primary purpose for his FOIA litigation, was to obtain the necessary, original, review file documentation of FDA's device application review for PMA P980022 et al." and "this objective has been consistently thwarted by the defendants" (Doc. 111). Specifically, plaintiff alleges that of his 46 FOIA requests, only one was fully answered. However, upon review of the pleadings and the exhibits and affidavits provided by the defendants, the Court disagrees.

### a. FDA Properly Searched and Produced Documents Responsive to Plaintiff's FOIA Requests

In order to obtain summary judgment, the defendants must show that they made a good faith effort to conduct a search for the requested records. *Patterson v. IRS*, 56 F.3d 832, 841 (7th Cir. 1995); Oglesby v. United States Dept. of the Army, 287 U.S.App. D.C. 126, 920 F.2d 57, 68 (D.C.Cir. 1990). Courts evaluate the adequacy of the search for reasonableness "in light of the specific request." *Patterson*, 56 F.3d at 841. The defendants may establish the reasonableness of their search through affidavits that provide a reasonably detailed description of its search method and procedures. *Id*. Here, defendants have satisfied their burden,

as established by both Sara Kotler and William Holzerland's declarations (Docs. 89-1 & 89-5) and attachments describing the scope of FDA's search (Docs. 89-3 & 89-7).

As to the dispute regarding the number of plaintiff's FOIA requests, FOIA requires that a records request must "reasonably describe[]" the records sought. 5 U.S.C. § 552(a)(3)(A); *see also* 21 C.F.R. § 20.40. To fulfill this requirement, the request must have enough specificity that "an agency employee [can] locate the records 'with a reasonable amount of effort.'" *Moore v. FBI*, 283 Fed. Appx. 397, 398 (7th Cir. 2008).

Here, the FDA ensures that it properly accounted for the records requested by plaintiff, despite the fact that many of the requests were not "reasonably described". 5 U.S.C. § 552(a)(3)(A).[5] Notwithstanding Henson's failure to comply, FDA employees spent a significant amount of time corresponding with him "in an attempt to clarify Plaintiff's document requests" (Doc. 89-1, ¶¶ 16–17 & Doc. 89-5, ¶¶ 14–17). CDRH and DFOI contacted FDA employees who had received plaintiff's letters or attended plaintiff's July 3, 2012 meeting with the FDA, and asked those employees to search their files for documents related to the specified letters or meeting (Doc. 89-1). Also, both Kotler and Holzerland communicated with Henson in order to further clarify exactly what Henson requested so a reasonable search could be conducted (*Id.*). During said communications, Holzerland

---

[5] FDA aggregated several of plaintiff's FOIA requests because of their overlapping nature. (Doc. 89-1, ¶17 & Doc. 89-5, ¶16). *See also* 21 C.F.R. § 20.42. FDA's aggregation did not modify the scope of Plaintiff's FOIA requests, but instead sought to reduce duplicate productions. (Doc. 89-1, ¶17& Doc. 89-5, ¶16).

explained to Henson that the questions Henson submitted did not qualify as FOIA requests, and that a proper FOIA request must reasonably describe the agency records sought (Doc. 89-5, ¶ 15).[6]

Looking to the adequacy of FDA's search for the documents relevant to plaintiff's 18 FOIA requests (the number of requests that were recorded by AIMS) (Doc. 89-2), FDA presented affidavits and documentation of the searches conducted in response to the 18 requests. Both Kotler and Holzerland's sworn declarations describe the extensive searches conducted by the FDA, and how the requests were processed by both DFOI (Doc. 89-3) and CDRH (Doc. 89-7). The declarations also describe the manner of search conducted, the indices and search parameters. FDA employees also "conducted a careful page-by-page, line-by-line review of all CDRH records produced to Plaintiff throughout the course of this litigation" to ensure that any information that could reasonably be segregated within the records was disclosed (Doc.89, ¶ 27).

The Court believes, and Plaintiff Henson presents no evidence to refute, that the search undertaken by the FDA was reasonably calculated to uncover all relevant documents. *In re Wade*, 969 F.2d 241, 249 n.11 (7th Cir. 1992)( "[T]he issue is not whether other documents may exist, but rather whether the search for

---

[6] FDA is not required to respond to a FOIA request for copies of documents that it has provided access to in an alternative form. See *Tax Analysts v. Dep't of Justice*, 845 F.2d 1060, 1065 (D.C. Cir. 1988). Thus, FDA does not have a FOIA obligation to send Henson documents that were already posted on FDA's website. However, FDA reviewed plaintiff's R-1 though R-10 letters to confirm that all of the documents described in those letters were included in at least one of plaintiff's 18 FOIA requests in order to provide Henson with the information requested (Doc. 89-1, ¶ 36 & Doc. 89-5, ¶ 24).

undisclosed documents was adequate."). The declarations and charts show how plaintiff's FOIA requests were processed by CDRH (Doc. 89-7) and DFOI (Doc. 89-3), and the final result of the disclosures (Docs. 89-8 & 89-4), all of which offers further support for the Court's conclusion. Accordingly, this Court finds that the FDA's search was adequate and met its obligations under FOIA to make a good-faith effort to locate records responsive to the request.

### b. FDA's Redactions were Proper.

Information and documents subject to a FOIA are only allowed to be withheld by a government agency if found to fit within any of the nine exemptions defined within 5 U.S.C. § 552(b)(1)-(9). The burden of proof rests upon the government agency to demonstrate that it was justified in determining that any such requested information and/or documents fall within a particular FOIA exemption. *Becker v. I.R.S.*, 34 F.3d 398, 402 (7th Cir. 1994). Additionally, all claimed FOIA exemptions must be narrowly construed, with a policy generally favoring disclosure. *Id.* (citations omitted).

The nature of a FOIA case at the summary judgment stage requires the government agency to submit an affidavit or declaration that sufficiently describes the documents withheld, the exemptions that support withholding those documents, and the reasons that demonstrate why those documents fall under the claimed exemptions. As long as the declaration and any *Vaughn* Index submitted by the agency are not controverted by other evidence on the record or by a showing of agency bad faith, it will then be sufficient to justify a granting of

summary judgment without the Court conducting an *in camera* review of the withheld documents. *Kimberlin v. Dep't of Treasury*, 772 F.2d 204, 210 (7th Cir. 1985). In this case, the Court finds the declarations submitted by the FDA directors to be sufficient for describing the applicable exemptions under 5 U.S.C. § 552(b).

### i. *Exemption 4*

FOIA Exemption 4 states that FOIA does not apply to matters that are "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). FDA's guideline for implementing Exemption 4 provides that "[d]ata or information submitted or divulged to the [FDA] which fall within the definitions of a trade secret or of confidential commercial or financial information are not available for public disclosure." 21 C.F.R. § 20.61. Holzerland's sworn declaration states that:

> "The records redacted pursuant to FOIA Exemption 4 contain information that constitutes trade secrets or commercial information obtained from a person that is privileged or confidential. Specifically, CDRH-DID generally relied on FOIA Exemption 4 to withhold information related to Medtronic's trade secrets or confidential commercial information used to support its application PMA P980022 and supplements to PMA P980022. For example, CDRH-DID asserted FOIA Exemption 4 to withhold information relating to the raw material used in the manufacturing process, raw material used in the testing process, and the pump's battery film.
>
> CDRH-DID also relied on FOIA Exemption 4 to redact Medtronic's confidential commercial information in documents related to CDRH's processing of Trade Complaint CPT1100031. Since Trade Complaint CPT1100031 was submitted by Plaintiff and alleged serious injury by the device that was approved in PMA P980022,

the redacted confidential commercial information in the Trade Complaint documents is similar to the information that is redacted under FOIA Exemption 4 in PMA P980022 and its supplements."

(Doc. 89-5, ¶¶ 30-31). Based on Holzerland's explanation regarding Exemption 4, and no evidence to the contrary, the Court finds the redaction under Exemption 4 to be appropriate. In further support of this conclusion, Holzerland and Kotler, both division directors with the FDA, declare that all redactions were accounted for in *Vaughn* indices sent to the plaintiff and the indices include a particularized explanation of each redacted page (Doc. 89-1, ¶ 28 & 89-5 ¶ 39),

### ii. *Exemption 5*

Exemption 5 of FOIA prevents agencies from having to disclose "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Pursuant to FOIA Exemption 5, the FDA redacted agency information that is both pre-decisional and deliberative. (Doc. 89-1, ¶ 33 & 89-5 ¶ 42). Both CDRH-DID and DFOI productions also contained redactions to information subject to the attorney-client privilege that is incorporated in Exemption 5. (Doc. 89-1, ¶ 33 & 89-5 ¶ 43). Specifically, Holzerland's sworn declaration states that:

> "CDRH-DID redacted certain records containing information exempt from disclosure under FOIA Exemption 5. FOIA Exemption 5 protects from public disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).
>
> Of the records that CDRH-DID redacted pursuant to FOIA Exemption 5, the majority include agency information that is both pre-decisional and deliberative. For example, much of the redacted

>information in the CDRH Ombudsman records is CDRH's internal pre-decisional deliberations regarding how to manage Plaintiff's voluminous correspondence with FDA. CDRH-DID also redacted information that is subject to the attorney-client privilege that is incorporated in Exemption 5."

(Doc. 89-5, ¶¶ 32-33). Also, Kotler's sworn declaration discusses the redaction of certain records pursuant to Exemption 5. Her declaration states that:

>DFOI redacted some information within records responsive to FOIA Request 2012-8504 that is not responsive to the request. For example, DFOI redacted information in internal agency emails that discussed FOIA requests submitted by requestors other than Plaintiff. FOIA Exemption 5 also applies to these redactions, as they regard internal, pre-decisional deliberations. See 5 U.S.C. § 552(b)(5).
>
>The remainder of information redacted by DFOI in its production documents was also exempt from disclosure under FOIA Exemption 5, 5 U.S.C. § 552(b)(5). Exemption 5 protects from public disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).
>
>Of the records that DFOI redacted pursuant to FOIA Exemption 5, 5 U.S.C. § 552(b)(5), the majority include agency information that is both pre-decisional and deliberative. For example, DFOJ asserted Exemption 5 to withhold information in the document responsive to FOIA Request 2014-4 769 because it is deliberative information in an internal memorandum regarding Plaintiffs appeal of an FDA FOIA request. Specifically, the information was authored by an FDA employee and contains pre-decisional information and opinions for an HHS FOIA Officer to consider while reviewing the Plaintiffs appeal. As another example, DFOI asserted Exemption 5 to withhold information in General Counsel records that contained internal, deliberative, and pre-decisional discussion with an agency attorney regarding how the agency should proceed after Plaintiffs July 3, 2012 meeting with FDA.
>
>DFOI's production to Plaintiff also contained redactions to some information that is attorney-client privilege information, pursuant to 5 U.S.C. § 552(b)(5).

> The information that DFOI redacted in the limited number of documents described in Plaintiffs R-2, R-3, R-5, and R-9 that may not have been covered by FDA's responses to Plaintiffs FOIA requests, was withheld because it was either not responsive, pre-decisional and deliberative pursuant to 5 U.S.C. § 552(b)(5)…"

(Doc. 89-1, ¶¶ 40-44). Based on Kotler's and Holzerland's explanations regarding Exemption 5 with no evidence to the contrary, and the fact that both declared that all redactions were accounted for in *Vaughn* indices with appropriate explanations (Doc. 89-1, ¶ 28 & 89-5 ¶ 39), the Court finds the redaction under Exemption 5 is appropriate.

### iii. *Exemption 6*

Exemption 6 of FOIA exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); see also 21 C.F.R. § 20.63. Kotler and Holzerland assert that the majority of information that FDA withheld pursuant to FOIA Exemption 6 identifies specific Medtronic patients (Doc. 89-5 ¶ 34). Additionally, a limited amount of private personal information related to Medtronic and to FDA personnel was redacted. This included private email addresses of Medtronic employees, and an FDA employee's cell phone number. (*Id.*). Specifically, Holzerland's sworn declaration states that:

> "DFOI redacted some information within records responsive to FOIA Request 2012-8504 that is not responsive to the request. Kotler Decl. ¶ 40. For example, DFOI redacted information in internal agency emails that discussed FOIA requests submitted by requestors other than Plaintiff. Id. 35. The information that FDA redacted in the limited number of documents described in Plaintiff's R-2, R-3, R-5, and R-9 that that may not have been

> covered by FDA's responses to Plaintiff's FOIA requests, is either not responsive to Plaintiff's FOIA requests, or is redacted in accordance with FOIA Exemptions 5 and/or 6. See Holzerland Decl. ¶ 35; Kotler Decl. ¶ 45.
>
> The majority of information withheld from Plaintiff pursuant to FOIA Exemption 6 consists of information that identifies patients in reports submitted by Medtronic. For example, the personally identifying information withheld includes the serial numbers of devices belonging to patients who reported feedback information to Medtronic, dates related to the patients' medical histories, and the patients' telephone numbers. Additionally, a limited amount of private personal information related to Medtronic and FDA personnel was redacted, such as the personal email addresses of a Medtronic employee, an FDA employee's cellphone number, and the name of an FDA employee who was on extended leave.
>
> The information that CDRH-DID redacted in the limited number of documents described in Plaintiff's R-2, R-3, R-5, and R-9 that may not have been covered by FDA's responses to Plaintiff's FOIA requests is redacted in accordance with FOIA Exemptions 5 and/or 6."

(Doc. 89-5, ¶¶ 34-36). Based on Holzerland's explanation regarding Exemption 6, and Kotler's sworn declaration, in addition to the fact that Holzerland and Kotler declare that all redactions were accounted for in *Vaughn* indices and include a particularized explanation of each redacted page (Doc. 89-1, ¶ 28 & 89-5 ¶ 39), the Court finds the redactions of personal privacy information under Exemption 6 to be appropriate.

Therefore, the Court finds that FDA produced responsive records that are properly redacted under the FOIA exemptions 4, 5, and 6. As mentioned above, FDA conducted a careful page-by-page review of the FDA records provided to plaintiff throughout the course of this litigation (Doc. 89-1, ¶ 27 & 89-5 ¶ 37). Also, for those records containing information exempt from disclosure, FDA

ensured that any information that could reasonably be segregated within said records was disclosed to plaintiff (*Id.*).

Finally, it is important to note that no documents were fully withheld from Plaintiff Henson; all redactions were accounted for in the *Vaughn* indices and included an explanation for said redactions (Doc. 89-1, ¶ 28 & 89-5 ¶ 39). Thus, the Court finds that the FDA reasonably conducted a search based upon Henson's FOIA requests and the agency produced all relevant documents. As to the necessary redactions, the Court finds that FDA had a legitimate reason for withholding certain information based on the FOIA exemptions.

## V. Conclusion

For the foregoing reasons, the Court **GRANTS** defendants' motion for summary judgment (Doc. 89). This FOIA cause is **DISMISSED with prejudice.** The Clerk of the Court is directed to enter judgment accordingly.

Furthermore, plaintiff's pending motions are **RENDERED MOOT** (Docs. 93, 97, 103, 105 & 106).

**IT IS SO ORDERED.**

Signed this 23rd day of March, 2017.

Digitally signed by Judge David R. Herndon
Date: 2017.03.23 15:11:55 -05'00'

**United States District Judge**